1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   DR. GREGORY CARTER, M.D. and
    ERIC JERVIS,
10

11                          Plaintiffs,

12          v.

13  GOVERNOR JAY INSLEE, et al.,

14                          Defendants.

CASE NO. C16-0809-JCC

ORDER DENYING PLAINTIFFS'
MOTION FOR A PRELIMINARY
INJUNCTION

15      This matter comes before the Court on Plaintiffs' Motion for a Preliminary Injunction

16  (Dkt. No. 7), Defendants' Response (Dkt. No. 18), and Plaintiffs' Reply (Dkt. No. 21). The

17  Court has also reviewed the Complaint (Dkt. No. 1). Having thoroughly considered the parties'

18  briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES

19  the motion for the reasons explained herein.

20  **I.      BACKGROUND**

21      Plaintiffs move the Court to enjoin a piece of Washington State legislation from taking

22  effect on July 1, 2016. (Dkt. No. 7.) The legislation in question, the Cannabis Patient Protection

23  Act ("CPPA") deals with access to medical marijuana.

24  **A.      History of Marijuana Laws in Washington State**

25      In November 1998, Washington voters passed Washington Initiative 692 ("I-692"), a law

26  authorizing medicinal marijuana use for qualifying persons suffering from terminal or

ORDER DENYING PLAINTIFFS' MOTION FOR
A PRELIMINARY INJUNCTION
PAGE - 1

debilitating conditions. (*See* Dkt. No. 18-1.) As codified, I-692 is also known as the Washington State Medical Use of Marijuana Act ("MUMA"), Rev. Code Wash. § 69.51A. While the use and possession of marijuana was still considered criminal under the federal Controlled Substances Act ("CSA"),  21 U.S.C. § 801, *et seq.*, and the Washington Uniform Controlled Substances Act, Rev. Code Wash. § 69.50, *et seq.*, the MUMA provided doctors, patients, and primary caregivers with an affirmative defense to a criminal prosecution under state law. (Dkt. No. 18-1 at 3; *see also* Rev. Code Wash. § 69.51A.005.) The MUMA was silent with respect to how patients might obtain medical marijuana, and did not provide a regulatory structure. (Dkt. No. 18-1.)

In 2012, Washington voters passed Initiative 502 ("I-502") which authorized adult marijuana possession and use for recreational purposes. I-502, *available at* http://sos.wa.gov/_assets/elections/initiatives/i502.pdf. I-502 established regulatory authority with the State Liquor and Cannabis Board ("LCB"). I-502 § 1(3). The LCB has since been empowered to regulate and tax a retail market for recreational marijuana sales, with processing beginning in 2013 and retail sales ongoing since 2014. (Dkt. No. 18 at 2.)

Washington's legalization of recreational marijuana has been broadly recognized as experimental. Marijuana remains a controlled substance under federal law. 21 U.S.C. §§ 841, 844. Since the passage of I-502, the United States Department of Justice issued a policy statement, known as the "Cole memo," with respect to states that had legalized marijuana. (Dkt. No. 18-2 at 2–5.) The Justice Department articulated its priorities for federal marijuana enforcement and in so doing indicated that it did not intend to interfere with state laws such as I-502. (*Id.*) The Cole memo acknowledged that "the federal government has traditionally relied on states and local law enforcement agencies to address marijuana activity through enforcement of their own narcotics laws." (*Id.* at 3.) Far from providing the states *carte blanche* with respect to marijuana regulation, the federal government indicated that it may intervene if jurisdictions fail to implement effective regulatory schemes. (*Id.* at 4.) "The Department's guidance in this memorandum rests on its expectation that states and local governments that have enacted laws

1 authorizing marijuana-related conduct will implement strong and effective regulatory and

2 enforcement systems that will address the threat those state laws could pose to public safety,

3 public health, and other law enforcement interests." (*Id.* at 3.) No steps have been taken by the

4 federal government to stop the implementation of I-502. (Dkt. No. 18 at 2.)

5        During the 2015 legislative session, the Washington Legislature adopted Senate Bill 5052

6 ("SB 5052"), also known as the Cannabis Patient Protection Act ("CPPA"). LAWS of 2015 SB

7 5052, c 70, *available at* http://lawfilesext.leg.wa.gov/biennium/2015-

8 16/Pdf/Bills/Senate%20Passed%20Legislature/5052-S2.PL.pdf. SB 5052 serves as an

9 amendment to the MUMA, and aims to integrate the medical and recreational marijuana markets

10 and for the first time establish regulatory oversight for medical marijuana in Washington State.

11 *Id.* at § 2. ("[T]he state now has a system of safe, consistent, and adequate access to marijuana;

12 the marketplace is not the same marketplace envisioned by the voters in 1998.") The present

13 lawsuit seeks to enjoin the implementation of SB 5052, which is set to take effect July 1, 2016.

14 **B.**       **The Present Litigation**

15       Plaintiff Eric Mevis is a medical marijuana patient who suffers from a rare, terminal

16 neurodegenerative disorder and experiences extreme pain, muscle spasms, an inability to speak

17 or swallow, and wasting. (Dkt. No. 1 at 3–4.) The use of medical marijuana has been essential to

18 managing his symptoms. (*Id.* at 4.) Plaintiff Dr. Gregory Carter is a physician with twenty-five

19 years' experience who "treats numerous patients for whom he believes marijuana is a medically

20 appropriate form of treatment." (*Id.* at 3.)

21       Plaintiffs oppose the implementation of SB 5052 and object to some of its regulations

22 including (1) the use of mandatory forms in prescribing medical marijuana in specific doses, and

23 (2) a requirement that physicians divulge patients' medical conditions to third-parties on a form

24 that patients take to marijuana retailers. Ostensibly, Plaintiffs are concerned with the risk of

25 federal criminal prosecution under the medical marijuana regime suggested by SB 5052. (Dkt.

26 No. 7 at 7) ("Doctors and patients are now being required to participate in a system that puts both

1  at risk by violating federal law with no defense available in federal court"). Associated with that

2  fear of prosecution, Plaintiffs suggest that SB 5052 threatens the protected doctor-patient

3  relationship, as doctors will not speak with their clients about medical marijuana use or fill out

4  the forms established under the new regulatory system out of fear of incriminating themselves or

5  their clients. (Dkt. No. 7 at 15.) Plaintiffs bring this action against Defendants, Washington State

6  officials in their official capacity, seeking "a declaration that physicians and patients have the

7  right, protected by the First Amendment to the U.S. Constitution, to communicate in the context

8  of a bona fide physician-patient relationship, without intervention by the Defendants, about the

9  issue of marijuana as medicine." (Dkt. No. 1 at 2.)

10  Plaintiffs now move for a preliminary injunction to either "stop SB 5052 from taking

11  effect on July 1, 2016 or an order striking I-502." (Dkt. No. 7 at 8.) In so moving, Plaintiffs rely

12  on the same legal claims that form the core of their complaint: (1) that SB 5052 is preempted by

13  the federal CSA, and (2) that SB 5052 impermissibly infringes on the doctor-patient relationship

14  protected by the First Amendment. (*Id.* at 14–15; Dkt. No. 1 at 17–18.)

15  **II.     DISCUSSION**

16  **A.     Standard of Review**

17  Under Fed. R. Civ. P. 65(a), the Court may issue a preliminary injunction if a plaintiff

18  establishes that she "[1] is likely to succeed on the merits, [2] that [s]he is likely to suffer

19  irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her]

20  favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*,

21  555 U.S. 7, 20 (2008). Mandatory preliminary injunctions, the kind requested here, are generally

22  disfavored in the law, and will only be ordered when the law and facts clearly favor the moving

23  party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

24  **B.     *Winter* Factors**

25  **1.     Likelihood of Success on the Merits**

26  Plaintiffs argue that they demonstrate a high likelihood of success on the merits of their

1 | underlying case due to the illegality of SB 5052 under the federal CSA. (Dkt. No. 7 at 14.) In

2 | large part, Plaintiffs rest this argument on the understanding that both I-502 and SB 5052, if

3 | properly challenged, would be considered preempted by federal law. (Dkt. No. 7 at 12) ("It was

4 | widely conceded . . . by the proponents of I-502 that it was entirely pre-emptible under federal

5 | preemption analysis . . . Then US Attorney for the Western district of Washington, Jenny

6 | Durkan, was quoted in the paper as saying she did not know a single lawyer who thought

7 | otherwise.") However, as Defendants point out, Plaintiffs must first demonstrate that they are

8 | authorized to bring a private suit under the causes of action they allege: the First Amendment,

9 | the Supremacy Clause, and the CSA. (Dkt. No. 18 at 6.)

10 | **a.     Potential Lack of Jurisdiction for Failure to Bring a Cause of Action**

11 | Plaintiffs assert, in their Complaint, that the Court has jurisdiction under 28 U.S.C.

12 | § 1343(3). (Dkt. No. 1 at 2.) However, § 1343 is a jurisdictional statute and does not create a

13 | cause of action. *See American Science & Engineering, Inc. v. Califano*, 571 F.2d 58, 63 n. 8 (1st

14 | Cir. 1978) (28 U.S.C. § 1343 "only comes into play where a cause of action exists"); *Campbell v.*

15 | *Gadsden Cty. Dist. Sch. Bd.*, 534 F.2d 650, 653 n. 3 ("[S]ection 1343 jurisdiction is unavailable

16 | in the absence of an appropriate cause of action"); *Liikane v. City of Seattle*, 2007 WL 445957, at

17 | *2 (W.D. Wash. Feb. 7, 2007).

18 | It is well established that the Supremacy Clause does not create a private right of action.

19 | "[T]he Supremacy Clause is not the 'source of any federal rights,' and certainly does not create a

20 | cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015)

21 | (internal citations omitted). Nor does the First Amendment confer a private right of action,

22 | although a First Amendment claim may proceed against a federal officer under *Bivens v. Six*

23 | *Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Hartman v.*

24 | *Moore*, 547 U.S. 250, 256 (2006). Plaintiffs' case does not fall under the purview of *Bivens.*

25 | The CSA also does not confer a right of action for citizen suits. "Like substantive federal

26 | law itself, private rights of action to enforce federal law must be created by Congress."

*Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 578 (1979). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* (citing *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15 (1979)). In drafting the CSA, Congress made its intent explicit: "No private right of action is created under this subsection." 21 U.S.C. § 882(5).

In response, Plaintiffs assert that the First, Fourth, and Fifth Amendments "give rise to a cause of action" under equity principles. (Dkt. No. 21 at 2.) Setting aside the fact that Plaintiffs do not bring a cause of action under either the Fourth or Fifth Amendments, it is true that federal courts "have long entertained suits in which a party seeks prospective equitable protection from an injurious and preempted state law without regard to whether the federal statute at issue itself provided a right to bring an action" under the doctrine established in *Ex Parte Young*, 209 U.S. 123 (1908). *Armstrong*, 135 S. Ct. at 1391 (citing cases). With respect to a cause of action under the CSA, this argument was squarely dismissed by the United States Supreme Court in *Armstrong*: "[R]espondents cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement." 135 S. Ct. at 1385.

In summary, the legal authorities under which Plaintiffs bring the above-captioned matter, the Supremacy Clause, the CSA, and the First Amendment, do not confer a private cause of action for citizens to bring suit. This substantially mitigates the likelihood that Plaintiffs will prevail on the merits of this case, though under the doctrine established by *Ex Parte Young*, it is possible that Plaintiffs may proceed under an equity theory for their First Amendment claim. *See Armstrong*, 135 S. Ct. at 1391. The Court notes that in forming this initial glimpse into the jurisdictional issues of this case, it does not reach the merits of Defendants' pending motion to dismiss. (Dkt. No. 20.) Further review may demonstrate whether this suit, under either legal theory, should proceed under an equity theory.

**b.       Further Issues with the Merits of Plaintiffs' Case**

1    In addition to potential jurisdictional issues, Plaintiffs' likelihood of success on the merits

2    is weakened by a lack of clarity regarding the allegedly injurious nature of SB 5052.

3        As Defendants argue in their response, SB 5052 was passed in order to afford further

4    protections to medical marijuana patients: by establishing oversight over the previously

5    unregulated medical marijuana market, by ensuring laboratory analysis of products sold to

6    qualifying medical patients, by requiring that those who produce and distribute medical

7    marijuana are licensed, and providing access to tax-exempt medical marijuana in higher

8    quantities—as prescribed by a physician—than that available to medical marijuana patients

9    under either the MUMA or I-502. (Dkt. No. 18 at 3–4.) SB 5052 establishes a medical marijuana

10   database that will be maintained by the Department of Health and subject to strict confidentiality

11   limitations; for example, persons who disclose information in the database or access information

12   to which they are not entitled are subject to prosecution for a Class C felony. (Dkt. No. 15 at 8'

13   Dkt. No. 18-3.) And, contrary to Plaintiffs' assertion that "[t]he legislature is turning thousands

14   of patients into felons overnight," SB 5052 provides affirmative defenses to both doctors and

15   patients for criminal prosecution. (Dkt. No. 18-1 at 3.)

16       The Court understands Plaintiffs as seeking a declaration that SB 5052 unconstitutionally

17   (1) infringes on the rights of patients and doctors to communicate about marijuana as medicine

18   and (2) exposes doctors and patients to criminal prosecution. (Dkt. Nos. 1 and 7.) However, the

19   Court's initial review of SB 5052 and the current record does not establish a strong likelihood of

20   Plaintiffs' success on this theory: SB 5052 appears to protect both patients and doctors, contains

21   provisions similar to those in the MUMA to allay fear of criminal prosecution, and sets forth

22   protections to ensure that patient information—even entered into a database—is subject to strict

23   confidentiality. (Dkt. No. 18-1.)

24       In summary, consideration of the likelihood of Plaintiffs' success on the merits weighs

25   against the entry of a preliminary injunction.

26       **2.      Likelihood of Irreparable Harm**

1      Next, the Court turns to the likelihood of irreparable harm. Plaintiffs must demonstrate

2   that an irreparable injury is not merely *possible*, but *likely*, absent injunctive relief. *Winter*, 555

3   U.S. at 22. As discussed above, Plaintiffs assert they will suffer two key injuries if SB 5052 takes

4   effect: (1) a restraint on doctor-patient candor in discussions regarding medical marijuana usage,

5   presumably out of fear of prosecution and invasion of privacy interests, and (2) criminal

6   prosecution itself. (Dkt. Nos. 1 and 7.) Both potential injuries are speculative.

7      First, Plaintiffs seem to misconstrue SB 5052's likely effect on doctor-patient

8   communication. While, to purchase marijuana in medical quantities will require the use of

9   authorization forms, Plaintiffs ignore the privacy protections SB 5052 provides in terms of

10  limiting access to patient information such as strict penalties for any misuse of the medical

11  marijuana patient database. And, as Defendants point out, in many instances the availability of

12  medical marijuana authorization forms may actually facilitate, rather than dissuade, doctor-

13  patient discussions about medical marijuana.

14     Second, the likelihood that Plaintiffs will face criminal prosecution is not substantially

15  increased by the passage of SB 5052. While subject to additional state regulations, the regime

16  under SB 5052 provides for affirmative defenses to state prosecution. And marijuana use is

17  treated no differently under federal law with the passage of SB 5052: it was illegal under the

18  MUMA, illegal under I-502, and remains illegal now. To suggest an imminence of federal

19  criminal prosecution under the medical marijuana system set forth by SB 5052 ignores the

20  policies expressed by the United States Department of Justice in the Cole memo. In fact, as the

21  Cole memo explains, the federal government may be more likely to intervene in instances where

22  a state or jurisdiction fails to "implement strong and effective regulatory and enforcement

23  systems." (Dkt. No. 18-2 at 3.) SB 5052 offers a stronger regulatory system than that previously

24  presented under the MUMA. While a change in DOJ priorities could affect the likelihood that

25  Plaintiffs and those in similar circumstances would face federal prosecution, the named

26  Defendants are powerless over any such change.

1    Consideration of the likelihood of irreparable harm factor similarly weighs against entry

2    of a preliminary injunction.

3        **3.        Balance of Equities and Public Interest**

4        Next, the Court assesses whether the balance of equities tips in Plaintiffs' favor and the

5    injunction is in the public interest. *Winter*, 555 U.S. at 20. These factors may be considered

6    together. *A.H.R. v. Wash. State Health Care Auth.*, 2016 WL 98513, at \*17 (W.D. Wash. Jan. 7,

7    2016).

8        Plaintiffs focus on the confusion doctors and patients face due to the "interrelationship, in

9    this state, between the 502 recreational scheme and medical marijuana." (Dkt. No. 7 at 19.)

10   Without citation or support, Plaintiffs argue that "[t]here are well over a hundred thousand

11   patients with authorizations and scores of doctors [who] have no idea how their rights and

12   responsibilities are changing." (*Id.* at 20.)

13       The Court certainly appreciates the confusion that many Washington citizens may feel

14   with respect to the relationship between medical marijuana, recreational marijuana, and federal

15   law. Additionally, the Court does not take lightly the discussion of how crucial medical

16   marijuana is to relieving Plaintiff Mevis's painful symptoms. However, an injunction halting

17   implementation of SB 5052 does not further either of those interests.

18       Contrary to Plaintiffs' assertions, SB 5052 advances the public interest by establishing

19   protections for medical marijuana patients, both legally and with respect to the safety of the

20   products they use. Furthermore, the structure established by SB 5052 may alleviate the confusion

21   regarding medical and recreational marijuana, through public education and the requirement that

22   marijuana retail stores have a medical marijuana consultant on staff. *See* WAC 314-55-080

23   (proposed).

24       Finally, the implementation of SB 5052 need not halt Plaintiff Mevis's access to the

25   medical marijuana he so desperately needs. Though the procedures will change, SB 5052 exists

26   to enable qualifying patients to gain access to medical marijuana.

Consideration of both the balance of equities and the public interest weighs against a preliminary injunction.

## III.    CONCLUSION

For the foregoing reasons, considering the factors established in *Winter*, 555 U.S. 7 (2008), Plaintiffs' motion for a preliminary injunction (Dkt. No. 7) is DENIED.

DATED this 30th day of June 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE