THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

GREGORY CARTER M.D., et al.,

CASE NO. C16-0809-JCC

10

Plaintiffs,

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION AND
FAILURE TO STATE A CLAIM

11

v.

12

JAY INSLEE, et al.,

13

Defendants.

14

15        This matter comes before the Court on Defendants' Motion to Dismiss for lack of subject

16  matter jurisdiction and failure to state a claim (Dkt. No. 20), Plaintiffs' Response (Dkt. No. 24),

17  and Defendants' Reply (Dkt. No. 26). Having thoroughly considered the parties' briefing and the

18  relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for

19  the reasons explained herein.

20

**I.        BACKGROUND**

21

22        Plaintiffs bring this cause of action for declaratory and injunctive relief. Plaintiffs request

23  a declaration that Senate Bill 5052 ("SB 5052), also known as the Cannabis Patient Protection

24  Act ("CPPA"), violates the federal Controlled Substances Act ("CSA") and "one or more

25  provisions of the U.S. Constitution," and is thus subject to preemption. (Dkt. No. 23 at 3, 26.)

26  The CPPA deals with access to medical marijuana in Washington State.

### A.  History of Marijuana Laws in Washington State

In 1998, Washington State passed Washington Initiative Measure No. 692 ("I-692"), authorizing the use of medical marijuana for terminal and debilitating conditions. (Dkt. No. 18 at 1). I-692 is also known as the Washington State Medical Use of Marijuana Act ("MUMA"). Rev. Code Wash. § 69.51A. MUMA did not legalize medical marijuana; medical marijuana was still illegal under the CSA, 21 U.S.C. § 801, *et seq.*, and the Washington Uniform Controlled Substances Act, Rev. Code Wash. § 69.50, *et seq*. Instead, MUMA provided doctors, patients, and primary caregivers charged with violating the State's controlled substances law with an affirmative defense to criminal prosecution. (Dkt. No. 18-1 at 3; *see also* Rev. Code Wash. § 69.51A.005.) In order to receive MUMA's protections, patients were required to obtain an authorization from a health care provider. (*Id.*) Once authorized, patients could possess up to a 60-day supply of marijuana. (Dkt. No. 18-1 at 3.) However, MUMA did not identify what amount of marijuana equated to a 60-day supply, and did not specify how qualifying individuals were to obtain marijuana. (*See Id.*)

In 2012, Washington State passed Washington Initiative Measure No. 502 ("I-502"). I-502, *available at* http://sos.wa.gov/_assets/elections/initiatives/i502.pdf. I-502 legalized the possession and recreational use of marijuana for adults, and established a "regulatory program for the intrastate production, processing, and retail sales of marijuana." (Dkt. No. 18 at 2.) The State Liquor and Cannabis Board ("LCB") received regulatory authority of the recreational marijuana retail market. (*Id.*; *see also* I-502 § 1(3).) Processing began in 2013, and retail sales have been ongoing since 2014. (*Id.*)

While I-502 legalized marijuana, marijuana remains a controlled substance under federal law. 21 U.S.C. §§ 841, 844 (2012). Since I-502's passage, the Department of Justice ("DOJ")

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 2

1   issued a policy statement, known as the "Cole memo," stating that the DOJ would not intervene

2   or challenge state legalization of marijuana so long as states maintained a strict system of

3   regulation addressing the threats marijuana legalization could pose to public safety, public

4   health, and other law enforcement interests. (Dkt. No. 18-2 at 2–3.) The Cole memo

5   acknowledged that "the federal government has traditionally relied on states and local law

6   enforcement agencies to address marijuana activity through enforcement of their own narcotics

7   laws." (*Id.* at 2.) However, the federal government indicated that a state's failure to implement an

8   effective regulatory scheme for marijuana legalization may result in federal intervention. (*Id.* at

9   4.) The federal government has not attempted to intervene in the implementation of I-502. (Dkt.

10  No. 18 at 2.)

11

12      I-502 regulated and legalized recreational marijuana, however medical marijuana

13  remained unregulated and illegal, with MUMA continuing to provide qualifying individuals an

14  affirmative defense when charged with violating the State's controlled substances law. (Dkt. No.

15  18 at 2.) However, in 2015, the Washington Legislature adopted the CPPA. LAWS of 2015 SB

16  5052, c 70, *available at* http://lawfilesext.leg.wa.gov/biennium/2015-16/Pdf/Bills/Senate%20Pas

17  sed%20Legislature/5052-S2.PL.pdf. The CPPA amends MUMA, "requiring the integration of

18  the unregulated medical marijuana market and the recreational marijuana market." (Dkt. No. 18

19  at 3.) Thus, the CPPA establishes regulatory oversight of medical marijuana in Washington State

20  for the first time. (*Id.*)

21

22      Under the CPPA, medical marijuana users are still required to obtain an authorization

23  form from their health care provider. *See* Rev. Code Wash. § 69.51A.030(3). However, the form

24  now used for authorization is standardized, and was developed by the Department of Health

25  ("DOH"). *Id*. The form is required to include the qualifying patient or designated providers'

26

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 3

personal information, i.e. name, address, date of birth, and the amount of marijuana

recommended for the qualifying patient. *Id*. Further, medical marijuana may now only be

purchased from a retail outlet with a medical marijuana endorsement. LAWS of 2015 SB 5052,

c 70, at 23–24. In order to receive a medical marijuana endorsement, marijuana retailers must

maintain an official department record of all medical marijuana applicants and authorization

holders in a medical marijuana authorization database ("database") that the DOH administers.

Retailers must employ at least one medical marijuana consultant to maintain the database. WAC

314-55-080. Medical marijuana consultants are required to complete a training or education

program and pass a criminal background check prior to receiving their license. Rev. Code Wash.

§ 69.51A.290. Only a medical marijuana consultant is permitted to enter qualifying patients or

providers' authorization information into the database. WAC 246-71-020. The information that

the consultant must enter includes valid photographic identification, full legal name, date of

birth, address, and the patient's qualifying conditions. *Id.*

  Patients may choose not to be entered into the database. *See* Rev. Code Wash.

§ 69.51A.210. If a qualifying patient submits to being entered into the database, they are issued a

recognition card by the marijuana retailer. Rev. Code Wash. § 69.51A.230. Those who submit to

being entered are able to purchase a greater variety and quantity of marijuana than those

purchasing marijuana recreationally. (Dkt. No. 18 at 4; *see also* Rev. Code Wash. § 69.51A.210.)

Further, they receive the ability to grow up to six marijuana plants in their domicile. (*Id*.) If a

health care provider specifies that an individual's condition requires more than six plants, she is

authorized to grow up to 15. (*Id*.)

  Medical marijuana users who choose not to be entered into the database but possess a

medical marijuana authorization "may only purchase the same quantity and types of marijuana as

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 4

the recreational user." (Dkt. No. 18 at 4; *see also* Rev. Code Wash. § 69.51A.210.) While they maintain the ability to assert an affirmative defense to prosecution, they "do not have the same legal protections from arrest, seizure, and charges as patients entered into the database." (Dkt. No. 18 at 4.) Further, they may grow no more than four marijuana plants. Rev. Code Wash. § 69.51A.210.

A minor patient may receive a medical marijuana authorization if her parent or guardian consents to her use of medical marijuana and agrees to act as her designated provider. Rev. Code Wash. § 69.51A.220. While non-minor patients are not required to be entered into the database, both the minor child and parent or guardian who is acting as her designated provider must consent to being entered into the database and hold a recognition card. *Id.* Finally, minors with a medical marijuana authorization are not permitted to grow marijuana plants. *Id.*

Information entered into the database is subject to strict privacy requirements, and access to the information is limited. *See* Rev. Code Wash. § 69.51A.230. Only marijuana consultants have full access to the database. WAC 246-71-020. Employees other than marijuana consultants "may verify that a patient is in the database when selling the patient medical products . . . in quantities and types different than the recreational purchaser," however, "their access is limited to the same public data as is on the recognition cards," which does not include information about the patients' diagnoses. (Dkt. No. 20 at 5; Dkt. No. 18-3 at 4.) Information contained in the database is not shared with the federal government or its agents "unless the particular [qualifying] patient or designated provider is convicted in state court for violating" the CPPA or the Washington State Uniform Controlled Substances Act. Rev. Code Wash. § 69.51.230. If a retailer violates the limitations on access to the database or discloses information from the database, they may be prosecuted for a Class C felony. Rev. Code Wash. § 69.51.240.

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 5

### B.  The Present Litigation

Plaintiff Eric Mevis ("Mevis") is a medical marijuana patient who suffers from a rare, terminal neurodegenerative disorder and experiences extreme pain, muscle spasms, an inability to speak or swallow, and wasting. (Dkt. No. 23 at 5.) The use of medical marijuana has been essential to managing his symptoms. (*Id*. at 6.) Plaintiff Meagan Holt ("Holt") is the mother of a 36-month-old daughter who suffers from a rare degenerative genetic condition, experiences seizures, and is blind. (*Id.*) Holt uses marijuana to manage her daughter's illness. (*Id*.) Plaintiff Dr. Gregory Carter ("Carter") is a physician with twenty-five years' experience who "treats numerous patients for whom he believes marijuana is a medically appropriate form of treatment." (*Id*. at 3.)

Plaintiffs assert 28 U.S.C. § 1331 federal question jurisdiction, arguing that the doctrine of *Ex Parte Young* provides this Court with equitable jurisdiction to hear their claims. Plaintiffs oppose the CPPA, arguing that its implementation violates the CSA. (Dkt. No. 23 at 26.) Further, Plaintiffs argue that the CPPA infringes on their First, Fourth, and Fifth Amendment rights. Specifically, Plaintiffs object to the CPPA's regulations, including (1) its use of the standardized authorization form in prescribing medical marijuana in specific doses, (2) its requirement that physicians divulge patients' medical conditions to third-parties on the authorization that patients take to marijuana retailers, and (3) its requirement that the information on the authorization form be stored in a database if patients are to receive the full benefits and legal protections of the CPPA. (*See Id.* at 15, 18.)

Plaintiffs allege that these requirements violate their First, Fourth, and Fifth Amendment rights for several reasons. First, Plaintiffs argue that the CPPA's regulations infringe on their "First Amendment protected doctor-patient relationship" by impermissibly restricting the content

of doctor-patient speech and requiring doctors to violate federal law. (Dkt. No. 23 at 24.)

Plaintiffs further allege that the CPPA's requirement that the authorization form be used to

prescribe a specific amount of marijuana, and that this form be shared with a third-party at a

marijuana retail shop, infringes on their doctor-patient relationship and right to not have this

relationship interfered with by the state. (*Id.* at 6, 15.) Additionally, Plaintiffs contend that

requiring them to use a state-sanctioned third party database, and then making that database

accessible to a multitude of users, violates their Fourth Amendment right against unreasonable

searches and seizures. (*Id.* at 25.) Finally, Plaintiffs argue that the CPPA violates their Fifth

Amendment right against self-incrimination by mandating use of the authorization form and

requiring that their personal information be entered into the database if they are to receive the

full benefits and protections of the legislation. (*Id.* at 24–25). Thus, Plaintiffs' constitutional

injuries are rooted in concern over an increased likelihood of federal criminal prosecution for

CSA violations under the CPPA's medical marijuana regime. (*See also* Dkt. No. 7 at 7)

("Doctors and patients are now being required to participate in a system that puts both at risk by

violating federal law with no defense available in federal court.").

Additionally, Plaintiff Mevis makes allegations regarding the CPPA's impact on his

ability to access the amount of marijuana required to treat his illness. (Dkt. No. 23 at 17–18.)

Plaintiff Mevis alleges that the maximum amount of marijuana available to him under the CPPA,

15 plants if he consents to being entered into the database, is "not enough marijuana to treat his

illness." (*Id.* at 17.) If Plaintiff Mevis does not consent to being entered into the database, he will

be entitled to posses less marijuana. (*Id.* at 17–18.) Plaintiff Mevis asserts that "none of these

options will meet [his] medical needs." (*Id.* at 18.) Further, Plaintiff Holt alleges that requiring

her to enter both her and her daughter's information into the database in order to receive

marijuana to treat her daughter's illness requires her to "face the Hobson's choice of doing what is medically best for her daughter or violating the law." (*Id*. at 6.) Thus, Plaintiff Holt alleges two potential injuries. First, that compliance with the CPPA violates her constitutional rights. Second, that refusing to comply with the CPPA's provisions prevents her from obtaining the marijuana her daughter requires.

Plaintiffs bring this action against Defendants, Washington State officials in their official capacity, seeking a permanent injunction enjoining the Defendants from enforcing the CPPA. (Dkt. No. 23 at 26.) Plaintiffs further seek declaration from this Court that the CPPA is "unconstitutional on its face and as applied, violative of federal law, and subject to federal preemption." (*Id*.)

Defendants move to dismiss Plaintiffs' cause of action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may by granted. (Dkt. No. 20 at 1.)

## II.   DISCUSSION

### A.   Standard of Review

Under Fed. R. Civ. P. 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While a complaint "does not need detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 8

1  standard "is not akin to a probability requirement," it requires more than a "sheer possibility that

2  a defendant has acted unlawfully." *Id.* When considering a motion to dismiss, a court can

3  identify "pleadings that, because they are no more than conclusions, are not entitled to the

4  assumption of truth," and dismiss those claims accordingly. *Id.* at 679.

5

6  **B.      Equitable Jurisdiction**

7  Federal courts are courts of limited jurisdiction. *See* 28 U.S.C. §§ 1331–1332 (2012). 28

8  U.S.C. § 1331 establishes federal jurisdiction for actions "arising under the Constitution, laws, or

9  treaties of the United States." 28 U.S.C. § 1331 (2012). "A case arise[es] under federal law

10 within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law

11 creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution

12 of a substantial question of federal law." *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130

13 (9th Cir. 2012) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 689–90

14

15 (2006) (internal quotation marks omitted)). Federal law creates the cause of action when a

16 complaint "is so drawn as to seek recovery directly under the Constitution or laws of the United

17 States." *Bell v. Hood*, 327 U.S. 678, 681 (1946). Determining whether a claim presents a

18 substantial question of federal law largely requires looking to congressional intent in enacting the

19

20 statute implicated by the claim. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804,

21 814 (1986). Courts must not disturb the "congressionally-approved balance of federal and state

22 judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308,

23 314 (2005). Thus, if Congress has failed to provide a private cause of action in enacting a federal

24 statute, federal-question jurisdiction on the basis of that statute is likely precluded. *See Merrell*

25 *Dow Pharmaceuticals Inc.*, 478 U.S. at 814. However, the lack of a private right of action is not

26

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 9

1    dispositive to finding that Congress intended to allow federal-question jurisdiction when

2    enacting a statute. *Grable & Sons Metal Products, Inc.*, 545 U.S. at 314.

3           Plaintiffs seek to invoke this Court's § 1331 jurisdiction in equity via the doctrine of *Ex*

4    *Parte Young*, alleging that this doctrine raises a federal question. They allege that they are

5    "seeking the traditional forms of equitable relief, declaratory judgment, and permanent

6    injunction available when a state or local officer is injuring plaintiffs by implementing a law or

7    policy that conflicts with federal law." (Dkt. No 23 at 23.) Plaintiffs assert that "equitable relief

8    is traditionally available to enforce federal law and vindicate constitutional rights," and that the

9    CPPA violates the federal CSA. (*Id.* at 23, 26.) Plaintiffs further allege that their "First, Fourth,

10   and Fifth Amendment rights are violated by state actors seeking enforcement" of the CPPA. (*Id.*

11   at 23.) Thus, according to Plaintiffs, this Court has equitable jurisdiction to hear their claims.

12   (Dkt. No. 24 at 2.)

13          Defendants argue that Plaintiffs may not utilize equitable jurisdiction as the basis for their

14   claims. According to Defendants, in order "for a federal court to exercise its equitable authority

15   to enjoin unlawful executive action, Congress must have authorized private enforcement of the

16   federal law at issue." (Dkt. No. 20 at 6.) Because there is no private right of action to enforce the

17   CSA, Defendants argue that Plaintiffs cannot rely on equitable jurisdiction as a basis for federal

18   jurisdiction. (*Id.*) Additionally, Defendants argue that because Plaintiffs' "constitutional claims

19   ultimately implicate their preemption claim" by focusing on a "fear . . . of criminal prosecution

20   under the CSA," Plaintiffs cannot invoke this Court's equitable jurisdiction to hear their

21   constitutional claims. (Dkt. No. 26 at 9.)

22

23

24

25

26
     ORDER GRANTING DEFENDANTS' MOTION
     TO DISMISS FOR LACK OF SUBJECT MATTER
     JURISDICTION AND FAILURE TO STATE A
     CLAIM
     PAGE - 10

### a.  Legal Standard

The doctrine of *Ex Parte Young* provides that a plaintiff may bring a suit against a state officer to enjoin violations of rights protected by the Constitution or afforded by federal law. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Davis v. Gray*, 83 U.S. 203, 216 (1872) (". . . a Circuit Court of the United States, in a proper case in equity, may enjoin a State officer from executing a State law in conflict with the Constitution or a statute of the United States, when such execution will violate the rights of the complainant.") A plaintiff who seeks injunctive relief from state regulation that violates constitutionally afforded rights has a right of action that arises under the Constitution, granting federal courts § 1331 jurisdiction. *See Ex parte Young*, 209 U.S. at 159–60. A plaintiff seeking such relief from state regulation that violates federally afforded rights "on the ground that such regulation is pre-empted by a federal statute . . . thus presents a federal question which the federal courts" have § 1331 jurisdiction to resolve. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983). "Where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion," federal courts may exercise equitable jurisdiction to remedy the violations. *See Bell*, 327 U.S. at 684. However, if a federal statute provides no general right to sue for the invasion of legal rights, federal courts may only exercise equitable jurisdiction if congressional intent indicates a desire to permit equitable relief. *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1385 (2015).

### b.  Controlled Substances Act

Plaintiffs seek to invoke equitable jurisdiction via the doctrine of *Ex Parte Young* to receive declaration from this Court that the CPPA violates the federal CSA, and is thus preempted by the CSA. (Dkt. No. 23 at 26.) In doing so, Plaintiffs improperly invoke this Court's equitable powers.

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 11

Equitable jurisdiction and the doctrine of *Ex Parte Young* seek to protect federally

afforded *rights* against invasion by state regulation. However, the CSA does not grant rights to

individual citizens; instead, the CSA seeks to "conquer drug abuse and to control the legitimate

and illegitimate traffic in controlled substances" by introducing a "closed regulatory system

making it unlawful to manufacture, distribute, dispense, or possess any controlled substance

except in a manner authorized by the CSA." *Gonzales v. Raich*, 545 U.S. 1, 12–14 (2005); *see* 21

U.S.C. §§ 841(a)(1), 844(a) (2012). In this way, the CSA regulates behavior by *restricting*

individuals' rights with regards to the substances enumerated in the CSA. While Plaintiffs may

utilize equitable jurisdiction to vindicate rights afforded by federal law and violated by state

regulation, they cannot do so when claiming state violation of a federal law that affords no rights.

Accordingly, equitable jurisdiction is not proper with regards to Plaintiffs' CSA claims.

Even if Plaintiffs could bring a claim in equity to enforce the CSA, which they cannot,

recent Supreme Court jurisprudence emphasizes that Congress intended to foreclose this ability

when enacting the CSA. The "power of federal courts of equity to enjoin unlawful executive

action is subject to express and implied statutory limitations," as "courts of equity can no more

disregard statutory and constitutional requirements and provisions than can courts of law."

*Armstrong*, 135 S. Ct. at 1384–1385. The Supreme Court has identified two factors that indicate

Congress intended to foreclose equitable relief when enacting a statute: (1) the express provision

of a single method of statutory enforcement, and (2) the "judicially unadministrable" nature of

enforcing that method. *Id.* at 1385.

The CSA expressly provides that the United States Attorney General will enforce its

provisions. *See* 21 USC §§ 841–51, § 881, § 875 (2012). As a federal criminal statute, it contains

no mechanism of enforcement against the states. *See* 21 U.S.C. § 903 (2012) (speaking only to

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 12

preemption of state law in "positive conflict" with the CSA, and not to enforcement remedies

against a state in violation of CSA provisions). Only where Congress has provided express

provisions for enforcement of a statute *against a state* should the court refuse to exercise

equitable jurisdiction via the doctrine of *Ex Parte Young*. *See Seminole Tribe of Florida*, 517

U.S. 44, 74 (1996); *Armstrong*, 135 S. Ct. at 1385 (holding Medicaid Act's specification of

enforcement provisions against a state foreclosed plaintiffs from bringing equitable jurisdiction

claim). However, because the CSA restricts individual rights, and not state rights, relative to the

substances controlled by its provisions, its lack of a mechanism for enforcement against the

states is inconsequential. Further, given the extreme complexity of judicial enforcement of the

CSA against a state, the exercise of equitable jurisdiction is improper in this case.

Thus, while the CSA did not "affirmatively preclude the availability of a judge-made

action at equity," this Court cannot exercise equitable jurisdiction with regards to Plaintiffs' CSA

allegations. *Armstrong*, 135 S. Ct. at 1386. Plaintiffs have failed to assert a right afforded by the

CSA and protected in equity. Further, analyzing equitable enforcement of the CSA utilizing the

Supreme Court's two factor test indicates that equitable jurisdiction is improperly exercised in

relation to the CSA. Accordingly, Plaintiffs have failed to state a CSA claim.

### c.   Constitutional Claims

Additionally, Plaintiffs seek to invoke the Court's equitable jurisdiction to receive

injunctive and declaratory relief with regards to Defendants' alleged violations of their First,

Fourth, and Fifth Amendment rights. Unlike the CSA, all three Amendments afford Plaintiffs

affirmative rights that arise under the Constitution. Thus, this Court properly exercises equitable

jurisdiction in relation to Plaintiffs' asserted violations of their constitutional rights.

1

**C.    Plaintiffs' Standing for Fourth and Fifth Amendment Claims**

2

Prior to analyzing whether Plaintiffs have adequately stated a claim, the Court addresses

3   whether Plaintiffs have standing to bring a lawsuit alleging that the CPPA violates their Fourth

4   and Fifth Amendment rights by increasing their likelihood for future federal prosecution.

5

The doctrine of standing is "an essential and unchanging part of the case-or-controversy

6   requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). In order

7   for a plaintiff to have standing to bring a claim, she must demonstrate:

8

9          (1) injury in fact, by which we mean an invasion of a legally protected
           interest that is (a) concrete and particularized, and (b) actual or imminent,
10         not conjectural or hypothetical ; (2) a causal relationship between the
           injury and the challenged conduct, by which we mean that the injury fairly
11         can be traced to the challenged action of the defendant, and has not
           resulted from the independent action of some third party not before the
12         court, and (3) a likelihood that the injury will be redressed by a favorable
           decision, by which we mean that the prospect of obtaining relief from the
13         injury as a result of a favorable ruling is not too speculative.

14
*Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508

15
U.S. 656, 663–664 (1993) (internal quotations omitted).

16

17         A violation of an individually afforded constitutional right provides a basis for standing.

18   *See Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 220–222 (1974). However,

19   "abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in

20   danger of sustaining some direct injury" as the result of the challenged official conduct. *City of*

21   *Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983). Further, when a plaintiff seeks equitable

22   relief in the form of an injunction or declaratory judgment, he must show "irreparable injury, a

23   requirement that cannot be met where there is no showing of any real or immediate threat that

24   the plaintiff will be wronged." *City of Los Angeles*, 461 U.S. at 111. For this reason, speculative

25

26

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 14

1    claims that allege a future injury will not suffice to sustain a claim for equitable relief. *Id.*

2    Instead, a plaintiff must demonstrate a substantial likelihood of future harm. *Id.*

3         Plaintiffs allege violations of their Fourth and Fifth Amendment rights, arguing that the

4    CPPA's regulations subject them to unreasonable searches and seizures and force them to

5    disclose self-incriminating information. However, these allegations fail to state a future injury

6    with any substantial certainty, as required by the doctrine of standing when a plaintiff seeks

7    equitable relief.

8         The Department of Justice's Cole memo explicitly states that the federal government will

9
10   not intervene with marijuana legalization if "states and local governments that have enacted laws

11   authorizing marijuana-related conduct will implement strong and effective regulatory and

12   enforcement systems that will address the threat those state laws could pose to public safety,

13   public health, and other law enforcement interests." (Dkt. No. 18-2 at 2.) Thus, while Plaintiffs

14   argue that the CPPA's regulations make them more vulnerable to federal prosecution, the Cole

15   memo indicates just the opposite. By enacting a strict system for medical marijuana regulation,

16   the CPPA decreases Plaintiffs' likelihood of federal prosecution relative to MUMA's previously

17   unregulated medical marijuana regime. While the Cole memo "does not alter in any way the

18
19   Department's authority to enforce federal law . . . regardless of state law," it provides sufficient

20   basis for this Court to conclude that Plaintiffs have not demonstrated with any degree of

21   substantial certainty that future injury, in the form of federal prosecution, is likely to occur. (*Id.*

22   at 4.) Thus, Plaintiffs have failed to articulate an injury entitling them to equitable relief under

23   the doctrine of standing. Absent an injury, Plaintiffs do not have standing to allege that the CPPA

24   violates their Fourth and Fifth Amendment rights. Accordingly, this Court cannot issue equitable

25   relief with regards to these allegations.

26   ORDER GRANTING DEFENDANTS' MOTION
     TO DISMISS FOR LACK OF SUBJECT MATTER
     JURISDICTION AND FAILURE TO STATE A
     CLAIM
     PAGE - 15

**D.      Plaintiffs' Failure to State a Claim under the First Amendment**

A lack of standing forecloses Plaintiffs' ability to assert that the CPPA violates their

Fourth and Fifth Amendment rights by increasing their likelihood for future federal prosecution.

However, Plaintiffs allege that the CPPA infringes on their First Amendment rights by

articulating an injury independent of their Fourth and Fifth Amendment claims. Further,

Plaintiffs Mevis and Holt allege an injury pertaining to the CPPA's impact on their ability to

obtain marijuana relative to their previous ability under MUMA. In addressing these allegations,

the Court concludes that Plaintiffs have failed to state a claim.

First, Plaintiffs have failed to allege facts sufficient to find an impermissible infringement

on their doctor-patient relationship, protected by the First Amendment. The First Amendment

states that "Congress shall make no law…abridging the freedom of speech." U.S. Const. amend.

I. The doctor-patient relationship is given First Amendment constitutional protection, and

"needlessly broad" regulations that intrude on this relationship are deemed unconstitutional.

*Whalen v. Roe*, 429 U.S. 589, 596 (1977). While the government has long reserved the right to

exercise its police powers to regulate professional conduct, individuals do not abandon their First

Amendment rights when they begin practicing a profession that is subject to state regulation.

*Stuart v. Cannitz*, 774 F.3d 238, 247 (4th Cir. 2014); *Conant v. Walters*, 309 F.3d 629, 637 (9th

Cir. 2002).

The First Amendment rights of professionals exist on a continuum. *Pickup v. Brown*, 740

F.3d 1208, 1227 (9th Cir. 2013). "Doctor-patient communications *about* medical treatment

receive substantial First Amendment protection, but the government has more leeway to regulate

the *conduct* necessary to administering treatment itself." *Id.* (emphasis added). Speech may be

implicated in the regulation of conduct, and First Amendment protection does not apply to

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 16

conduct that is not "inherently expressive." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006). Additionally, if regulations do not compel a doctor to represent an opinion contrary to the one he or she holds, the regulations do not significantly impinge on the doctor's right of free speech. *Rust v. Sullivan*, 500 U.S. 173, 200 (1991). A requirement that forces physicians to say things that they otherwise would not say is compelled speech. *Stuart*, 774 F.3d at 246. Compelled speech receives First Amendment protections. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 576 (1995).

Plaintiffs allege that the CPPA impermissibly regulates doctor-patient speech, in violation of their First Amendment rights. Specifically, Plaintiffs argue that the CPPA's requirement that doctors prescribe an amount of marijuana to a patient on the authorization form, as well as bring the authorization form to a non-medical third-party, infringes on the doctor-patient relationship. However, these regulations do not amount to an impermissible regulation of First Amendment, doctor-patient protected speech. The State is permitted to regulate the conduct of doctors acting in their official capacity, just as the CPPA does. The CPPA's regulations do not apply to conduct that is "inherently expressive." Instead, the CPPA merely requires doctors to prescribe a specific amount of marijuana to patients, as doctors are required to do anytime they issue a prescription. Further, such a universally practiced requirement, that doctors write prescriptions, can hardly be considered compelled speech, in violation of doctors' First Amendment rights. While Plaintiffs contend that presenting the authorization form to a third-party at a marijuana retail shop further infringes on their doctor-patient protections, these assertions amount to nothing more than conclusory statements. (*See* Dkt No. 23 at 15) ("The requirement that the form be used and a non-medical third party participate in the process impermissibly infringes on the doctor-patient relationship.") Plaintiffs fail to present facts to

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 17

1
2
support these allegations. Thus, Plaintiffs have failed to articulate a cognizable First Amendment injury.

3
4
Additionally, Plaintiffs Mevis and Holts' allegations regarding the accessibility of medical marijuana under the CPPA are incapable of sustaining this action in court. Not only do these allegations fail to state facts sufficient to find a federally recognized right to bring this action, but they fail to assert a violation of a protected right. As Plaintiffs have indicated, there is no recognized right to marijuana, and marijuana is illegal under the CSA. Thus, Plaintiffs cannot assert that the CPPA's restriction on, or denial of, their access to marijuana constitutes an impermissible infringement on protected activity sufficient to sustain this cause of action. Seeking medical marijuana is entirely optional. While the Court greatly sympathizes with the symptoms that Plaintiff Mevis and Plaintiff Holt's daughter are forced to manage, the lack of a legally recognized right to marijuana forecloses a determination that the impact of the CPPA on their access to marijuana constitutes a legally cognizable injury.

Thus, Plaintiffs' have failed to state a claim alleging violations of their First Amendment protected, doctor-patient relationship, as well as alleging injury based on a decreased access to medical marijuana. Accordingly, Plaintiffs are incapable of maintaining a cause of action premised on these allegations in this Court.

## III.     CONCLUSION

Plaintiffs lack subject matter jurisdiction to state a claim based on the federal CSA's preemption of Washington State's CPPA. Additionally, Plaintiffs lack standing to bring Fourth and Fifth Amendment claims premised on a fear of the increased likelihood of federal prosecution under the CPPA for CSA violations. Because Plaintiffs' remaining First Amendment

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 18

1   and marijuana accessibility claims fail to state a claim on which relief may be granted, the Court

2   dismisses Plaintiffs' cause of action.

3          For the foregoing reasons, Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1)

4   for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a

5   claim on which relief may by granted (Dkt. No. 20) is GRANTED. This case is dismissed with

6   prejudice.

7

8          DATED this 25th day of August 2016.

9

10

11

12

13   _____

14   John C. Coughenour
     UNITED STATES DISTRICT JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A
CLAIM
PAGE - 19